# MARTINO

# AFFIDAVIT

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Santiago Garcia,)
)
      Plaintiff,)
)
vs.) Case No. 07 Civ. 8277 (AKH)
)
SOS Security Incorporated,)
)
      Defendant.) **AFFIDAVIT OF JOSEPH MARTINO**
) **IN SUPPORT OF DEFENDANT'S**
) **MOTION TO DISMISS**
)

**JOSEPH MARTINO**, of full age, being duly sworn according to law, upon his oath according to law, deposes and says:

1. I am the New York Vice President-Regional Manager for Defendant SOS Security Incorporated ("SOS"). I have held this position since January 1, 2008. Prior to attaining this position, I served as Branch Manager from February 2006 to January 2008 and as Assistant Branch Manager of the New York Branch from August 2004 to February 2006. As such, I have personal knowledge of the facts set forth herein.

2. As Branch Manager my duties include the general oversight of all of the New York metropolitan area SOS client locations, including, staffing, employee and customer relations, payroll and other related matters.

3. Plaintiff Santiago Garcia ("Plaintiff") has worked as a security officer for SOS since September 2001. He still works for SOS.

4. From 2001 through December 2005, Plaintiff was assigned to work at 1515 Broadway, New York ("the Viacom Building"). During his four year tenure in this building, Plaintiff worked three different posts – the Viacom Building lobby, the

loading dock, and the mailroom. While employed in the Viacom Building, Plaintiff earned the hourly wage of $10.05 and worked an eight-hour daytime schedule.

5. On or around December 30, 2005, Plaintiff reported to the New York Branch Office and advised me that his post in the Viacom Building had been cut. I learned that Plaintiff's post in the Building mailroom was eliminated by Viacom due to budget cuts.

6. While SOS generally attempts to accommodate employee requests as to work location, hours and the like, we cannot guarantee employee preferences. A security officer is employed by SOS, not the specific location of his position. As employer, SOS has the right to transfer its security officers to various locations or to adjust officers' schedules depending on the needs of SOS or its clients. In this case, SOS did not decide to reassign Plaintiff, but his site and shift had to be adjusted because of Viacom's reduction in out-sourced security personnel.

7. As Plaintiff reported to the Branch Office unexpectedly and during our busiest time of the year, there were no full-time posts immediately available on the days and hours Plaintiff requested. I offered Plaintiff numerous part-time positions until I was able to locate an available full-time position. However, Plaintiff refused to work nights or weekends. At that time I advised Plaintiff that placing him in a new post would be more difficult because of his scheduling restrictions. In addition, I told Plaintiff that I would try to accommodate his schedule request, but that I could not guarantee him a specific shift or location.

8. The job duties of an SOS security officer depend on his individual post assignment. Each security officer undergoes training specific to that post. Because

of these training requirements, security officers are not interchangeable. Therefore, if an officer's post is eliminated, he or she has to train for another post. The displaced officer does not simply get assigned to a different post at which there is an already trained officer.

9. In or around mid-January, I found a position for Plaintiff at a Verizon Wireless retail store located at 981 Third Avenue in New York. The 8:00 am until 2:00 pm, Monday through Friday schedule suited his demands. Plaintiff continues to work at this location and earns the hourly wage of $9.50.

10. A security officer's hourly wage depends on the site where he is located. As a vendor, SOS negotiates different contracts with each client. Some clients are willing to pay more for security officers depending on the particular client's need and site demands. Being reassigned to a client location which pays a lower hourly wage is not a demotion. Likewise, reassignment to a location which pays its officers higher wages is not a promotion. The wages are simply site-specific and determined by the client, not SOS.

11. Because Plaintiff was a very dependable, hard-working employee, I continued to search for an available position that would suit his schedule requests and increase his income. In November 2006, a position opened at a new Verizon Wireless retail store located at 166 West 125th Street in New York. This post paid $12.00 per hour because it sought an experienced security officer to work the 7:00 am to 2:30 pm shift. I offered Plaintiff that position once it opened. Despite the significant increase in income that the job provided, Plaintiff rejected it, advising me that he "would not work in Harlem".

12. I am told that Plaintiff claims he was subject to discrimination because of a disability. To my knowledge, Plaintiff has never become ill while working at his Verizon post, nor has he reported to me the existence of any serious medical condition or physical impairment that would prevent him from performing any post to which he was assigned. Plaintiff is reliable, responsible and is essentially a model employee. I have not received any complaints from his supervisor, nor has he been the subject of any disciplinary actions while working for SOS.

13. I then offered him another position that satisfied his schedule demands at a substantially higher rate of pay, but he declined it. Plaintiff still works for SOS and is held in high regard by his coworkers and supervisors. If a post opened up in the Viacom Building, I will certainly consider Plaintiff for it.

JOSEPH MARTINO

Sworn to and subscribed
before me this 17 day
of April, 2008.

NOTARY PUBLIC

MARTIN J MAHALCHICK
Notary Public - State of New York
No. 01MA6160038
Qualified in Kings County
My Commission Expires November 4, 2009